IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC NYCE, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | NO. 11-cv-5066 |
| STERLING CREDIT CORPORATION, | : | |
| Defendant. | : | |

DuBois, J.     April 2, 2013

**M E M O R A N D U M**

## I. INTRODUCTION

Plaintiff Eric Nyce sued defendant Sterling Credit Corporation for violating numerous provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. Sterling moved for summary judgment on all of Nyce's claims. For the reasons that follow, the motion is granted in part and denied in part.

## II. BACKGROUND[1]

This case concerns Sterling's attempts to recover a debt from Nyce. Sterling contacted Nyce numerous times by phone and by mail. The specifics of each communication are set forth in Sterling's responses to Nyce's interrogatories. (See Resp. Ex. B at 5-7.) To summarize: Sterling called Nyce nine times between April 27, 2010 and June 19, 2010. Sterling started its calls again in December, calling Nyce thirteen times between December 20, 2010 and January 7, 2011. Of the last thirteen calls, eleven occurred between December 20th and December 23rd. In

---

[1] As required on a motion for summary judgment, the facts set forth in this Memorandum are presented in the light most favorable to plaintiff, the non-moving party.

some instances, Sterling called immediately after Nyce hung up the phone. Sterling also sent a letter to Nyce once a month every month (except April) from March, 2010 to December, 2010.

One of the main disputes in the case is a letter that Nyce claims he sent to Sterling on June 7, 2010 by mail, by fax, and through Sterling's website. In the letter, Nyce requests that Sterling "cease and desist communication" with him. (Resp. Ex. C.) Sterling states that it never received the letter. On January 14, 2011, Sterling received a second cease and desist letter for Nyce's account. Sterling did not subsequently attempt to contact Nyce.

Nice filed his initial Complaint on August 8, 2011. An Amended Complaint was filed on April 2, 2012. In both complaints, Nyce claims that Sterling violated various provisions of the FDCPA. Sterling now moves for summary judgment.

## III.    LEGAL STANDARD

In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim. Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). After examining the evidence of record, a court should grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

A factual dispute is material when it "might affect the outcome of the suit under the governing law" and genuine when "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

**IV. DISCUSSION**

Nyce claims that Sterling violated numerous provisions of the FDCPA – specifically, that Sterling violated (A) §1692c(c) by contacting Nyce after Nyce notified Sterling in writing that he wished to cease further communication; (B) §1692d by repeatedly calling Nyce with the intent to annoy, abuse, or harass; (C) § 1692c(a)(1) by communicating with Nyce at an inconvenient time; and (D) § 1692f by using unfair or unconscionable means to attempt to collect a debt. The Court will address each claim in turn.

    A.    Section 1692c(c): Contacting Nyce After He Notified Sterling He Wished to Cease Further Communication

Pursuant to § 1692c(c), "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt. . . ."

Sterling argues that summary judgment should be granted with respect to this claim because (a) there is no evidence that Sterling ever received a written notice from Nyce, and (b) even if Nyce did notify Sterling in writing, the statute of limitations bars some or all of Nyce's claims.

3

(a) Nyce's Written Notice to Cease Further Communication

There is a genuine issue of material fact regarding whether Nyce notified Sterling in writing that he wished to cease further communication. Nyce attests in an affidavit that he sent Sterling a cease and desist letter on June 7, 2010 in three ways: via mail, via fax, and via Sterling's website. (See Resp. Ex. A.) He also submitted an affidavit from his wife, stating that she saw her husband mail the letter. (See Id. Ex. D.) Finally, he provided the letter he claims to have mailed and faxed to Sterling. (See Resp. Ex. C.)

Sterling, on the other hand, states that it has no record of receiving the notification from Nyce. Dennis Fife is a vice president of Sterling and his responsibilities include processing correspondence from debtors. (Mot. Ex. A, Fife Dep. at 6, 37-39.) He testified at his deposition that he did not receive Nyce's June 7, 2010 cease and desist letter. (Id. at 43.)

This claim turns on whether Nyce and his wife are to be believed when they stated they notified Sterling or whether Fife is to be believed when he testified that Sterling never received the notification. This is a genuine dispute of material fact that is not appropriate to resolve in a motion for summary judgment. The Court will therefore address Sterling's next argument that the claim is barred by the statute of limitations.

(b) Statute of Limitations

Sterling argues that Nyce's § 1692c(c) claim is barred in its entirety by the FDCPA's one-year statute of limitations because the Complaint was filed over a year after it received the cease and desist letter. The Court disagrees.

An FDCPA claim must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). No violation occurs when "the consumer notifies a debt

4

collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer." See § 1692c(c). Rather, the violation occurs when a debt collector, after receiving such a notice, nevertheless "communicate[s] further with the consumer." Id. Assuming arguendo that Sterling received the cease and desist letter on or shortly after June 7, 2010 (which Sterling disputes), any communication that occurred after Sterling received the letter and within one year of the filing of the Complaint is within the statute of limitations. Nyce's initial Complaint was filed on August 8, 2011. Accordingly, any communication from Sterling to Nyce on or after August 8, 2010 is within the limitations period.

However, this does not fully resolve the issue. Nyce argues that the "continuing violation doctrine" permits him to recover for communications even before August 8, 2010. "Under the continuing violation doctrine, when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Snyder v. Baxter Healthcare, Inc., 393 Fed. App'x 905, 909 (3d Cir. 2010) (internal quotations omitted).

The continuing violation doctrine is not applicable in all cases. There is a "bright-line distinction between discrete acts, which are individually actionable, and acts which are not individually actionable but may be aggregated to make out a . . . claim." O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006). The continuing violation doctrine is available only for claims based on the latter type of acts. Id.

After "a consumer notifies a debt collector in writing that the consumer refuses to pay a

5

debt or that the consumer wishes the debt collector to cease further communication with the consumer" §1692c(c) prohibits a debt collector from "communicat[ing] further with the consumer with respect to such debt." In other words, any subsequent communication violates the statute. Thus, each time Sterling contacted Nyce after receiving the cease and desist letter was a discrete act that is individually actionable. The continuing violation doctrine is not applicable to such claims.

The motion summary judgment is granted to the extent the § 1692c(c) claim is based on communications that occurred before August 8, 2010 and denied to the extent it is based on communications that occurred on August 8, 2010 or later.

B. Section 1692d: Repeatedly Calling Nyce with the Intent to Annoy, Abuse, or Harass

Pursuant to § 1692d, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." "Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number" is such a violation. § 1692d(5).

Sterling argues that (a) the one-year the statute of limitations bars consideration of any call that occurred before August 8, 2010, and (b) as a matter of law, Sterling did not violate § 1692d(5).

(a) Statute of Limitations

The Court ruled above that the continuing violation doctrine does not apply to Nyce's § 1692c(c) claim because each time Sterling contacted Nyce after receiving the cease and desist

letter was an independent violation. The same is not true of Nyce's § 1692d claim. That section prohibits conduct such as repeatedly or continuously calling someone with the intent to annoy, abuse, or harass. No one call is a violation, but the pattern of calls could be. In other words, the acts must aggregated to make out Nyce's claim under § 1692d. Accordingly, the continuing violation doctrine is available. See O'Connor, 440 F.3d at 127.

Sterling called Nyce nine times between April 27, 2010 and June 19, 2010 and thirteen times between December 20, 2010 and January 7, 2011. It also sent a letter to Nyce once a month every month (except April) from March, 2010 to November, 2010. A reasonable jury could conclude that this pattern was part of a continuing violation. The Court will therefore turn to Sterling's second argument that, as a matter of law, it did not violate § 1692d.

      (b)     Violation of § 1692d

Section 1692d(5) prohibits repeated and continuous calls "with intent to annoy, abuse, or harass. . ." Such intent "may be inferred from the frequency of phone calls, the substance of the phone calls, or the place to which phone calls are made." Shand-Pistilli v. Professional Account Services, Inc., No 10-1808, 2011 WL 2415142, at *5 (E.D. Pa June 16, 2011). "District courts have found that a high volume of calls alone may be sufficient to state a plausible claim that a debt collector engaged in harassing conduct." Tamayo v. American Coradious Intern., L.L.C., No. 11-6549, 2011 WL 6887869, at *3 (D.N.J. Dec. 28, 2011). The court in Tamayo cited cases in which motions to dismiss were denied where the plaintiff had alleged nine calls over a thirty day period, eleven calls over a nineteen day period, and seventeen calls in a month. Id. Additionally, "[c]ourts have found that an immediate callback after the debtor has hung up or has indicated his or her unwillingness to speak to the debt collection agency may constitute improper

harassment." Shand-Pistilli, 2011 WL 2415142 at *5.

In this case, Sterling called Nyce twenty-two times: nine times over fifty-two days and then thirteen times over eighteen days. Eleven of the last thirteen calls occurred in a four day period. Sometimes, Sterling called multiple times a day and in some instances, immediately after Nyce hung up the phone. Moreover, Sterling sent letters to Nyce on a regular basis for nine months. Under these circumstances, a reasonable jury could infer an intent to annoy, abuse or harass. Thus, the motion for summary judgment is denied with resepct to the § 1692d claim.

        C.      <u>Section 1692c(a)(1): Communicating with Nyce at an Inconvenient Time</u>

Pursuant to § 1692c(a)(1), "a debt collector may not communicate with a consumer in connection with the collection of any debt . . . at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer." The statute further specifies that "[i]n the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian." § 1692c(a)(1).

Nyce does not argue that the Sterling called at a time it should have known was inconvenient. Rather, Nyce argues that his § 1692c(a)(1) claim is contingent on the disputed issue of whether Nyce sent the June 7th cease and desist letter. The Court rejects that argument. § 1692c(a)(1) prohibits calls at an unusual time, whether or not the debt collector has been informed in writing of the consumer's desire to cease communication. There is no evidence of any communication that occurred outside the 8AM to 9PM time period or that Sterling's calls were at an inconvenient time for Nyce. Thus, Sterling's motion for summary judgment is granted with respect to the § 1692c(a)(1) claim.

D. <u>Section 1692f: Using Unfair or Unconscionable Means to Attempt to Collect a Debt</u>

Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." The provision also provides a nonexhuastive list of unlawful conduct such as "[d]epositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument" and "causing charges to be made to any person for communications by concealment of the true purpose of the communication." § 1692f(4)-(5). There is no evidence that Sterling used unfair or unconscionable means to attempt to collect a debt. In fact, Nyce makes no argument with respect to this provision. Sterling's motion is therefore granted with respect to the § 1692f claim.

V. CONCLUSION

Sterling's motion for summary judgment is denied with respect to Nyce's § 1692d claim, and Nyce's § 1692c(c) claim to the extent it is based on communications that occurred on or after August 8, 2010. The motion is granted with respect to Nyce's § 1692c(a)(1) claim, Nyce's §1692f claim, and Nyce's § 1692c(c) claim to the extent it is based on communications that occurred before August 8, 2010.

An appropriate order follows.